CANNON v. CITY OF DURHAM

[120 N.C. App. 612 (1995)]

HAZARD CANNON, Plaintiff v. THE CITY OF DURHAM, DENNIS W. McNAMES, NEW
DURHAM CORPORATION, HARLAN E. BOYLES, STATE TREASURER AND
LOCAL GOVERNMENT COMMISSION OF NORTH CAROLINA, Defendants

No. COA94-1167

(Filed 7 November 1995)

**1. Limitations, Repose, and Laches § 160 (NCI4th)— challenge to financing of ballpark—applicability of doctrine of laches**

The doctrine of laches applies to any challenge to an action by the State of North Carolina or any of its municipalities, and it is of no consequence whether the actions are *ultra vires* or *void ab initio*. Therefore, plaintiff's action challenging a city's financing and construction of a ballpark as *ultra vires* was barred by laches where it was instituted more than two years after the project was approved.

**Am Jur 2d, Equity §§ 173-176.**

**What constitutes laches barring right to relief in taxpayers' action. 71 ALR2d 529.**

**2. Constitutional Law § 51 (NCI4th)— municipal financing of ballpark—no standing of taxpayer to challenge**

Plaintiff taxpayer lacked standing to challenge the manner in which defendants financed the construction of a ballpark, since plaintiff had only a generalized objection to the allegedly improper financing techniques used by defendants.

**Am Jur 2d, Constitutional Law § 202; Taxpayers' Actions §§ 13-27.**

Appeal by Plaintiff from Order and Judgment entered 26 August 1994 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 22 August, 1995.

*Randall, Jervis & Hill, by Robert B. Jervis, for plaintiff-appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker and John J. Butler, for defendant-appellee City of Durham.*

*Michael F. Easley, Attorney General, by Douglas A. Johnston, Assistant Attorney General, for defendants-appellees Harlan E. Boyles and Local Government Commission.*

CANNON v. CITY OF DURHAM

[120 N.C. App. 612 (1995)]

WYNN, Judge.

In this action, plaintiff seeks to enjoin defendant City of Durham from making any further installment payments to defendant New Durham Corporation on an installment purchase contract. Plaintiff also seeks an order declaring that the installment purchase contract, and a deed of trust executed on the new Durham Athletic Park by the City of Durham to secure financing for the project, are void.

On 21 May 1992, the Durham City Council approved resolution 7719, which, among other things, authorized the negotiation of an installment purchase contract, and the issuance of debt instruments known as Certificates of Participation, to finance the proposed construction of the new Durham Athletic Park (ballpark), and to finance ongoing water improvement projects. The resolution also ordered that public hearings be held at the next scheduled City Council meeting to assist the City Council in determining whether to go ahead with the planned construction of the ballpark. Following notice of publication in the Durham Herald Sun on 22 May 1992, a public hearing was held on 1 June 1992, during the regular meeting of the City Council. The City Council heard from several citizens and decided to proceed with the transaction outlined in the 21 May resolution. On 23 July 1992, the City Council of Durham adopted Resolution 7731 which formally authorized the City of Durham to participate in the construction of the new ballpark, along with the water treatment projects which were also outlined in the 21 May resolution.

The record indicates that extensive publicity surrounded the construction of the ballpark, as well as the transactions involved in financing it. Despite the publicity surrounding the construction of the ballpark, plaintiff waited until 16 June 1994, more than two years after the City of Durham approved the project, to file this action.

Thereafter, defendants filed a motion to dismiss plaintiff's complaint, alleging that plaintiff failed to state a claim upon which relief could be granted. At the hearing on defendants' motion to dismiss, evidence, in the form of affidavits and documents, was presented by both sides without objection. As a result, the trial court converted the motion to dismiss into a motion for summary judgment, and in an Order and Judgment dated 26 August 1994, granted summary judgment in favor of defendants on all claims. From this decision plaintiff appeals. Finding no error in the decision by the trial court, we affirm.

Defendants assert two principal arguments supporting the trial court's grant of summary judgment in their favor: (1) That plaintiff's claims are barred by laches, and (2) That plaintiff lacks standing to bring the action.

I.

[1] Summary judgment in favor of a defendant asserting the defense of laches is proper despite the fact that laches is an affirmative defense, and the burden of proof is on the defendant. *Taylor v. City of Raleigh*, 290 N.C. 608, 227 S.E.2d 576 (1976), *Capps v. City of Raleigh*, 35 N.C. App. 290, 241 S.E.2d 527 (1978).

In *Taylor*, the Supreme Court held that when the defense of laches is raised, "the plaintiff . . . is permitted to counter [the defense of laches] by showing a justification for the delay, and whenever this assertion raises triable issues, defendant's motion [for summary judgment] will not be granted." *Id.* at 622, 227 S.E.2d at 584. In addition, the defendants must show that the plaintiff's delay in bringing suit has prejudiced, disadvantaged, or injured the defendants. *Id.* at 624, 227 S.E.2d at 584-585.

Plaintiff does not argue on appeal that he is not guilty of laches; rather, he contends that the doctrine of laches does not apply when the actions of a municipality are asserted to be *ultra vires*. We disagree. In *Stutts v. Swaim*, 30 N.C. App. 611, 228 S.E.2d 750, *disc. rev. denied*, 291 N.C. 178, 229 S.E.2d 692 (1976) this Court held the doctrine of laches applicable when a rezoning ordinance was asserted to be invalid. The *Stutts* Court held that even if a rezoning ordinance was beyond the authority of the city, or *ultra vires*, the plaintiffs are "not entitled to relief if they are guilty of laches." *Id.* at 615, 228 S.E.2d at 752.

Plaintiff argues that for purposes of determining whether the doctrine of laches applies, there is a distinction between a case which involves an improper exercise of a municipality's otherwise lawful powers, such as in *Stutts*, and an act which is *ultra vires*, or completely beyond the authority of the municipality. Plaintiff contends that acts which fall into the latter category are *"void ab initio,"* and that the doctrine of laches does not apply. We disagree.

In *Franklin County v. Burdick*, 103 N.C. App. 496, 405 S.E.2d 783 (1991), *cert. denied*, 332 N.C. 147, 419 S.E.2d 570 (1992) this Court addressed a claim by defendants, in an action by the county for collection of back taxes, that a 1970 North Carolina constitutional

amendment approved by a ballot measure violated the United States Constitution. This Court held the doctrine of laches applicable to the contention by the defendant that the ballot measure in question was unconstitutional. *Id.* No measure taken by a municipality could be more clearly *ultra vires,* or *"void ab initio"* than an action which violates the United States Constitution. Nevertheless, the *Franklin County* Court applied the doctrine of laches to a claim that North Carolina passed a constitutional amendment which violated the United States Constitution. The *Franklin County* Court found that the plaintiff was guilty of laches and denied plaintiff the possibility of relief.

Thus, the doctrine of laches applies to any challenge to an action by the State of North Carolina, or any of its municipalities. In determining that the doctrine of laches applies to the case at hand, we need not address the merits or validity of plaintiff's claims. The doctrine of laches does not serve to make an illegal action valid; instead, it serves to deny the guilty party the relief afforded by equity. *Taylor,* 290 N.C. 608, 227 S.E.2d 576. Having determined that laches is applicable, we affirm the ruling of the trial court.

II.

[2] Although we find the doctrine of laches dispositive of the subject case, we hold further that the decision of the trial court should be affirmed because the plaintiff lacks standing to challenge the manner in which the defendants financed the construction of the ballpark.

Our courts have consistently held that a taxpayer has no standing to challenge questions of general public interest that affect all taxpayers equally. *Orange County v. Dept. of Transportation,* 46 N.C. App. 350, 265 S.E.2d 890, *disc. rev. denied,* 301 N.C. 94 (1980), *Green v. Eure,* 27 N.C. App. 605, 220 S.E.2d 102 (1975), *disc. rev. denied and appeal dismissed,* 289 N.C. 297, 222 S.E.2d 696 (1976), *Texfi Industries v. City of Fayetteville,* 44 N.C. App. 268, 261 S.E.2d 21 (1979), *aff'd,* 301 N.C. 1, 269 S.E.2d 142 (1980).

In this case, plaintiff has only a generalized objection to the allegedly improper financing techniques used by the defendants. Plaintiff does not have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues upon which the court so largely depends for illumination of [difficult questions]." *Stanley v. Dep't of*

*Conservation and Development,* 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973), [quoting from *Flast v. Cohen,* 392 U.S. 83, 99, 20 L. Ed. 2d 947, 961 (1968)].

For the foregoing reasons the judgment of the trial Court is

Affirmed.

Judges GREENE and JOHN concur.